IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>Jenk's Best Living, LLC<br><br>Debtor. | Case No. 26-12812-SAH<br>(Chapter 11) |

**OPPOSITION TO MOTION TO DISMISS JENK'S BEST LIVING, LLC BANKRUPTCY PROCEEDINGS FOR LACK OF JURISDICTION AND LACK OF AUTHORITY AND ALTERNAITVELY, MOTION TO TRANSFER VENUE**

Comes now Jenk's Best Living, LLC ("Jenk's" or the "Debtor"), by and through undersigned propose counsel, in opposition to the *Motion to Dismiss Jenk's Best Living, LLC Bankruptcy Proceedings for Lack of Jurisdiction and Lack of Authority and Alternatively, Motion to Transfer Venue*, ECF No. 47 (the "Motion"), and states as follows:

## I. Introduction

Seemingly without any sense of irony, YSA Investments 1, LLC ("YSA") is accusing Jenk's of seeking bankruptcy protection in bad faith. YSA is also positing—counter-factually and counter-legally—that Jenk's lacked authority to petition for bankruptcy relief, on the spurious theory that YSA had fully stripped Jenk's of the ability to reorganize. Alternatively, in what is now likely an all-but-moot request, YSA seeks to transfer this case to the United States Bankruptcy Court for the District of Delaware.

The Motion merits denial for myriad reasons. First, and most self-evidently, this is not a bad faith bankruptcy filing by any measure. Jenk's is seeking to use chapter 11 to undo the unconscionable harms inflicted by YSA. Such is the very epitome of a good faith utilization of title 11 of the United States Code (the "Bankruptcy Code"). Just because something disrupts the mischievous and meddlesome scheming of YSA does not, in turn, make such an act of bad faith.

Second, Jenk's *did* have authority to file this case. While this issue is not extensively discussed herein because it is the subject of a pending adversary proceeding, the record will ultimately make clear that YSA did not lawfully seize the membership interests of Jenk's and, to the contrary, the members of Jenk's unanimously consented to the filing of a petition for bankruptcy relief. There is a fact-intensive rationale for this, relating to the documents governing Jenk's and its management. There is also a simpler legal rationale for this, relating to YSA's seemingly bold decision to endeavor to carry out a UCC sale without actually adhering to the UCC or conducting a sale.

Finally, it appears the request for a transfer of venue is outdated, having been filed at a time when YSA was endeavoring to reorganize in Delaware and Jenk's was seeking to do so in Maryland. Both entities—alongside several others—now have cases pending before this Honorable Court. And there is assuredly no colorable argument for severing Jenk's and sending it to a different court (much less a court other than the one where Jenk's petitioned for relief in the first instance).

## II. Argument: This is Not a Bad Faith Filing

This is not a bad faith case, for numerous reasons both subjective and objective in nature. Not only is bankruptcy intended to offer shelter to entities like Jenk's, that lose their assets to constructively fraudulent conveyances, but bankruptcy is also intended to allow such entities to triage litigation claims and work toward an orderly reorganization. It is at-best rich for YSA to accuse Jenk's of a bad faith chapter 11 filing, when it is the actions of YSA that precipitated this filing *en toto* and when YSA has continued to wreak havoc by filing its own awkwardly-timed chapter 11 case. In any event, though, this is far from a bad faith case.

As a threshold matter, the question of bad faith—just as all legal questions in the Jenk's case—is to be determined under the laws and precedent that govern the United States Bankruptcy Court for the District of Maryland, since that is where Jenk's filed its case in the first instance. *See, e.g.*, *Spitz v. Starr Indem. & Liab. Co.*, 2026 U.S. App. LEXIS 16817, at *6 (10th Cir. June 10, 2026) ("When an action is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court applies the substantive law—including choice-of-law principles—of the transferor court.") (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990)); *In re Spillane*, 884 F.2d 642, 645 n.4 (1st Cir. 1989) ("We recognize that the cited cases interpret 28 U.S.C. § 1404(a), the general provision for transfer of civil cases. Transfer of bankruptcy cases is authorized by a separate provision, 28 U.S.C. § 1412. In the absence of law interpreting § 1412, however, 'the analogy provided by decisions applying the general change of venue provision . . . is helpful.'") (quoting *In re Miller*, 485 F.2d 74 (5th Cir. 1973)).

Maryland is located within the Fourth Circuit. *See* 28 U.S.C. § 41. Under that circuit's precedent, to establish a chapter 11 case has been filed in bad faith ". . . the complaining party must show both 'subjective bad faith' and the 'objective futility of any possible reorganization.'" *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 182 (4th Cir. 2023) (quoting *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*, 64 F.4th 84, 98 n.8 (3d Cir. 2023) (quoting *Carolin Corp.*, , 886 F.2d 693, 694 (4th Cir. 1989))).

In *Carolin Corp.*, the Fourth Circuit explained the rationale underlying this two-pronged standard:

> Such a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the

> threshold. We believe that such a stringent test is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing.

*Carolin Corp.*, 886 F.2d at 701. *See also Coleman v. Cmty. Tr. Bank (In re Coleman)*, 426 F.3d 719, 727 (4th Cir. 2005) (reaffirming the policy rationale).

Here, Jenk's shows neither subjective bad faith nor objective futility. The former prong ". . . is designed to insure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" *Carolin Corp.*, 886 F.2d at 702 (quoting *In re Victory Constr. Co.*, 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)). Such is precisely what Jenk's looks to do, having already filed—prior to even a hearing on first day motions—an adversary proceeding to, alternatively, either (i) declare the entity's eponymous asset has not been lost to YSA; or (ii) avoid such loss under the provisions of chapter 5 of the Bankruptcy Code. *See Jenk's Best Living v. Kulick, et al.*, Case No. 26-01040 (Bankr. W.D. Okla. 2026) (the "Adversary Proceeding"). And using the tools of chapter 5 of the Bankruptcy Code, to efficiently reorganize, is, of course, an effective use of "the provisions of Chapter 11 . . . to reorganize." *Carolin Corp.*, 886 F.2d at 702. Such, in turn, necessitates a finding this case was *not* filed in subjective bad faith.

Yet there is also an absence of bad faith as evidenced by the case not being objectively futile. To the contrary, but for the putative debt to YSA, Jenk's is a healthy entity, able to pay its debts as they come due. So if Jenk's can avoid the alleged obligation to YSA, it stands to reason Jenk's will be able to put forth a viable and confirmable plan of reorganization. One need look no further than Judge Harner's ruling, entering a temporary restraining order in the Adversary Proceeding, to realize that ". . . the Plaintiff has demonstrated a likelihood of prevailing on its

fraudulent transfer claims under section 548 of the Code." Adversary Proceeding at ECF No. 21, p. 5.

At bottom, this case demonstrates neither of the indicia of bad faith requisite to such a finding under governing Fourth Circuit precedent. And the Motion should accordingly be denied to the extent it seeks dismissal of this case.

## III. Argument: The Debtor Had Authority to File for Relief

YSA also posits that Jenk's lacked authority to petition for chapter 11 relief and, as such, ought not be permitted to reorganize. This is a particularly cynical argument insofar as the core underlying contention is essentially that YSA's gimmickry has been sufficiently successful as to divest YSA's various victims of the ability to seek recourse in bankruptcy. Ultimately, however, this argument fails for two reasons.

First, YSA is simply wrong. As is being urged in the Adversary Proceeding—and as will be determined through adjudication of the Adversary Proceeding—there was never an effective conveyance of any asset of the Debtor or of any membership interest in the Debtor. Jenk's is notably different than other entities affiliated with Marc Kulick in light of the ownership structure of Jenk's, the corporate governing documents of the entity, and the emphatic restrictions on the scope of Mr. Kulick's authority set forth in those governing documents. This all was—or should have been—known to YSA. And, as more extensively urged in the Adversary Proceeding, YSA cannot feign to have effectuated corporate actions through mechanisms YSA knew, or should have known, to be insufficient in nature.

Second, YSA appears to have botched operation of its own Rube Goldberg machine. Inherent in YSA's argument—beneath jaw-dropping interest rates, legally-repugnant powers of attorney, and inane loan documents—is a notion that the membership interest in one or more

limited liability companies was effectively conveyed to YSA under the Uniform Commercial Code. Yet there is scant—if any—evidence of a UCC sale actually being carried out in any manner that even vaguely comports with well-established governing law. And there is thusly a fallacy underlying the whole contention that YSA controls one or more entities whose approval is putatively requisite to Jenk's seeking bankruptcy relief.

These issues will be more extensively addressed in the Adversary Proceeding. This Honorable Court has already indicated issues related to capacity to file will need to be determined through such proceedings, and Jenk's looks forward to having the merits of its case adjudicated in due course.

## IV. Argument: A Transfer of Venue is Inappropriate

Finally, YSA seeks a transfer of venue to Delaware. Given that YSA's case has since been transferred to this Honorable Court, as has this case, it is suspected this is not an argument or form of relief YSA intends to further pursue. Suffice it to posit, however, that sending the Debtor's case to Delaware, after YSA's case was sent from Delaware to this Honorable Court, would be *reductio ad absurdum*.

## V. Conclusion

WHEREFORE, Jenk's respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: September 3, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
*Application for Admission Pending*
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
(301) 444-4600
mac@mbvesq.com
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of September, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig